UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CDS BUSINESS SERVICES, INC., doing business
as Newtek Business Credit,                                            Case No. 2:21-cv-01992-JS-ST

                                Plaintiff,

            -against-

STEPHAN JOSEPH SEBBAG,

                              Defendant.


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT OR,
<u>IN THE ALTERANTIVE, TO TRANSER VENUE</u>**


SICHENZIA ROSS FERENCE LLP
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
Tel. No. (212) 930-9700

*Attorneys for Defendant Stephan Joseph Sebbag*


<u>Of Counsel</u>:
Thomas McEvoy, Esq. (TM-1984)
Mark E. Goodfriend, Esq. (*admitted pro hac vice*)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ....................................................................................................2

STANDARD OF REVIEW ....................................................................................................7

LEGAL ARGUMENT............................................................................................................7

I.   Plaintiff Has Failed to Meet Its Burden of Establishing
     That Defendant Transacted Any Business in New York  .......................................7

II.  The Forum-Selection Clause in the Personal Guaranty
     Is Unconstitutional and Unenforceable.................................................................10

     A.   California Law Governs, Applying New York Choice-of-Law Rules ...........11

     B.   The Forum-Selection Clause is Unenforceable As Against Defendant.........14

III. The Court Should Dismiss the Complaint for Improper Venue, Or
     In the Alternative, Transfer the Venue to the
     Central District of California .................................................................................17

     A.  Dismissal Is Warranted Due to Improper Venue.........................................17

     B.  In the Alternative, the Court Should Transfer the Venue to
         The Central District of California ...............................................................19

     CONCLUSION.................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                         **Page(s)**

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*,
    571 U.S. 49, 134 S. Ct. 568, 187 L.Ed.2d 487 (2013) ....................................................17

*Bank of America, N.A. v. Hensley Properties, LP*,
    495 F. Supp.2d 435 (S.D.N.Y. 2007) .............................................................................21

*Blechman v. Ideal Health, Inc.*,
    668 F. Supp.2d 399 (E.D.N.Y. 2009) .............................................................................19

*Charles Schwab Corp. v. Bank of America Corp.*,
    883 F.3d 68 (2d Cir. 2018)……………………………………………………………...7

*Cleft of the Rock Foundation v. Wilson*,
    992 F. Supp. 574 (E.D.N.Y. 1998) ...................................................................................7

*Cosa Xentaur Corp. v. Bow*,
    No. 13-cv-2912 (JS) (ARL), 2014 WL 1331030 (E.D.N.Y Mar. 31, 2014) ...................18

*Dolson v. New York State Thruway Authority*,
    No. 00-cv-6439 (RLC), 2001 WL 363032 (S.D.N.Y. Apr. 11, 2001).............................18

*Eagle Access, LLC v. BHA, Inc.*,
    No. 05-cv-2837 (NRB), 2007 WL 193725 (S.D.N.Y. Jan. 25, 2007)..……………….....11

*First Nat'l. Bank & Trust Co. v. Wilson*,
    171 A.D.2d 616, 567 N.Y.S.2d 468 (N.Y. App. Div. 1st Dep't. 1991) ......................... 8-9

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000).............................................................................................20

*Geffner v. Quanta Services, Inc.*,
    No. 18-cv-3761 (JPO), 2018 WL 6807399 (S.D.N.Y. Dec. 27, 2018).............................17

*Gilbert v. Gottlieb*,
    No. 95-cv-3038, 1995 WL 761835 (E.D.N.Y. Dec. 15, 1995)...................................18-19

*Grafton Partners v. Superior Court*,
    116 P.3d 479, 36 Cal. 4th 944 (Cal. 2005)..…………………………………………...11

*Guo Jin v. EBI, Inc.*,
    No. 05-cv-4201 (NGG) (SMG), 2008 WL 896192 (E.D.N.Y. Mar. 31, 2008)……………7

*Handoush v. Lease Finance Group LLC*,
    41 Cal. App. 5th 729, 254 Cal. Rptr.3d 461
    (Cal. App. 1st Dist. 2019……………………………………………………………..10

*Hines v. 1025 Fifth Ave., Inc.*,
    No. 14-cv-3661 (SAS), 2015 WL 765943 (S.D.N.Y. Feb. 23, 2015) ..............................13

*In re County of Orange*,
    784 F.3d 520 (2d Cir. 2015)................................................................................................11

*Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*,
    327 F. Supp.3d 673 (S.D.N.Y. 2018)................................................................................11

*Kowalski-Schmidt v. CLS Mortgage, Inc.*,
    981 F. Supp. 105 (E.D.N.Y. 1997)………………………………………………………10

*Leon v. Shumkler*,
    992 F. Supp.2d 179 (E.D.N.Y. 2014) ...........................................................................7-8

*Madison Stock Transfer, Inc. v. Exlites Holdings Int'l., Inc.*,
    368 F. Supp.3d 460 (E.D.N.Y. 2019)………………………………………………….10

*Marsh USA Inc. v. Hamby*,
    28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Table)
    (N.Y. Sup. Ct. N.Y. Cty. Jul. 22, 2010)……………………………………………..10

*Medtronic, Inc. v. Walland*,
    No. 21-cv-2909 (ER), 2021 WL 34131657 (S.D.N.Y. Sep. 10, 2021)............................12

*Migliore v. Dental Fix Rx, LLC*,
    No. 15-cv-04257 (BRO) (SSx), 2016 WL 7655768
    (C.D. Cal. Jul. 22, 2016) ..................................................................................................15

*Millennium Products Group, LLC v. World Class Freight, Inc.*,
    No. 2:17-cv-169 (DRH) (AYS), 2018 WL 1247384 (E.D.N.Y. Mar. 9, 2018).................8

*Mirman v. Feiner*,
    900 F. Supp.2d 305 (E.D.N.Y. 2012) ..............................................................................7

*Mohamad v. Rajoub*,
    No. 17-cv-2385 (LAP), 2018 WL 1737219 (S.D.N.Y. Mar. 12, 2018)…………………6

*Novak v. Overture Services, Inc.*,
    309 F. Supp.2d 446 (E.D.N.Y. 2004)…………………………………………………10

*Rainbow Apparel Distribution Center Corp. v. Gaze U.S.A., Inc.*,
    295 F.R.D. 18 (E.D.N.Y. 2015)…………………….…………………………….......10

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*,
    8 Cal. App.5th 1, 213 Cal. Rptr.3d 410 (Cal. App. 1st Dist. 2017)....................................13

*Rudgayzer v. Google Inc.*,
    986 F. Supp.2d 151 (E.D.N.Y. 2013) ...............................................................................14

*Stephan v. Babysport, LLC*,
    499 F. Supp.2d 279 (E.D.N.Y. 2007) .................................................................................7

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)..................................................................................................8

*TGG Ultimate Holdings, Inc. v. Hollett*,
    224 F. Supp.3d 275 (S.D.N.Y. 2016) ...............................................................................14

*Trafalgar Power, Inc. v. Algonquin Power Corp., Inc.*,
    No. 5:99-cv-1238 (NPM) (DEP), 2001 WL 37120011 (S.D.N.Y. May 2, 2011) ............11

*Waldorf Assoc. v. Neville*,
    141 Misc.2d 150, 533 N.Y.S.2d 182 (N.Y. Sup. N.Y. Cty. Jul. 29, 1998),
    *aff'd.* 155 A.D.2d 283, N.Y.S.2d 556
    (N.Y. App. Div. 1st Dep't. 1989)…………………….……………………......................9

*Wechsler v. Hunt Health Systems, Ltd.*,
    No. 94-cv-8294 (PKL), 2003 WL 21878815 (S.D.N.Y. Aug. 8, 2005)………………….11

*5381 Partners LLC v. Sharesale.com, Inc.*,
    No. 12-cv-4263 (JFB) (AKT), 2013 WL 5328324 (E.D.N.Y. Sep. 23, 2013) .................15

**Statutes**                                            **Page**

Fed. R. Civ. P. 12(b)(2)........................................................................................................7

Fed. R. Civ. P. 12(b)(3)......................................................................................................17

28 U.S.C. § 1391................................................................................................................18

28 U.S.C. § 1404................................................................................................................19

28 U.S.C. § 1406................................................................................................................17

Defendant Stephan Joseph Sebbag ("Sebbag") respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(2) and (3), to dismiss the Complaint of CDS Business Services, Inc. doing business as Newtek Business Credit ("Plaintiff" or "Newtek"), or, in the alternative, to transfer the venue of this action to the Central District of California pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) (the "Motion"), along with such other and further relief as this Court deems proper.

## PRELIMINARY STATEMENT

This action stems from two intertwined lines of credit secured by two non-party, California companies, Big Picture Group LLC ("Big Picture") and BPG Interactive, LLC ("BPG") (Big Picture and BPG, together, the "BPG Entities"). At all times relevant to the Complaint, Mr. Sebbag was the Manager of the BPG Entities and a resident of the State of California. In essence, the Complaint alleges that Mr. Sebbag defaulted on a personal guaranty which Newtek demanded at the eleventh hour be included within an accounts receivable agreement between itself and the BPG Entities. Left with virtually no alternative and after months of negotiations the loans his companies desperately needed, Mr. Sebbag had no choice but to agree to the personal guaranty.

Putting aside for purposes of the Motion Mr. Sebbag's meritorious defenses to Newtek's allegations, the Complaint suffers from a more immediate deficiency – the lack of personal jurisdiction over Mr. Sebbag. In the process of negotiating business lines of credit for the BPG Entities, Mr. Sebbag was located in California, where he resided at the time and continues to reside. In fact, during the approximate six to eight month negotiation process for the business lines of credit, not once did Mr. Sebbag travel to New York. Moreover, the BPG Entities, which are now defunct, had their principal place of business in California and were citizens of that State.

Accordingly, Plaintiff has failed to proffer facts establishing that Mr. Sebbag transacted business within the State of New York.

Apparently cognizant of Mr. Sebbag's lack of contacts with the State of New York, Newtek injected into the Personal Guaranty an unconstitutional forum selection clause, mandating that the State of New York have exclusive jurisdiction over any dispute arising under the Personal Guaranty (the "Forum Selection Clause").   In the paragraph immediate preceding the Forum Selection Clause is a jury trial waiver.  As such, the Forum Selection Clause is null and void insofar as it violates public policy and interferes with Mr. Sebbag's constitutional right to a jury trial.  In fact, in a case with similar facts to the one at bar, the Supreme Court of the State of California has ruled that forum selection clauses, such as the one at issue, are not binding and are unenforceable against its citizens.  Accordingly, Plaintiff has failed to meet its burden that this Court has personal jurisdiction over Mr. Sebbag.

In the alternative, to the extent that the Court finds there to be personal jurisdiction, it should transfer venue to California, which has a greater interest than New York in prosecuting this case.  California law must apply to this action because applying New York law would violate Mr. Sebbag's right to a jury trial in plain violation of California's Constitution.  Moreover, California has more contacts with this action than New York, as Mr. Sebbag and the BPG Entities were citizens of California at all relevant times hereto.   Accordingly, to the extent that the Court finds there to be personal jurisdiction, it should transfer the venue of this matter to California.

## STATEMENT OF FACTS

In or about 2019, the BPG Entities were in desperate need of financing for purposes of cash low and new sales hires.  (Declaration of Stephan Joseph Sebbag,[1] at ¶ 4).  Mr. Sebbag, a resident

---

[1] Hereinafter, the Declaration of Stephan Joseph Sebbag will be referred to as the "Sebbag Declaration."

of California, was introduced to Faustino Gonzales of Newtek through Joseph Lustberg, who at the time worked as a financial advisor for Accel Capital, Inc. (*See id.*, at ¶¶ 2 and 4). Mr. Lustberg advised Mr. Sebbag that Newtek offered loans through the United States Small Business Administration ("SBA"), and suggested that he contact them to obtain financing for the BPG Entities, which qualified as small businesses through the SBA. (*See id.*). The BPG Entities were seeking a total of approximately $1.2 million in financing, and in or about 2019, Mr. Sebbag began negotiations with Newtek to secure loan in that amount through the SBA. (*See id.*).

Mr. Gonzales advised that as part of the underwriting process for the loan, and due to the total amount of financing the BPG Entities sought, Newtek required two separate loans, each in the amount of approximately $600,000.00, and that the second loan would be offered only after the parties closed on the first loan. (*Id.*, at ¶ 5). Netwek further required that the first loan (hereinafter, the "SBA Loan"), needed to be secured by a second mortgage on Mr. Sebbag's residence. (*Id.*). Left with few other options, Mr. Sebbag agreed, as Manager of the BPG Entities, with that proposal. (*Id.*). After three to four months of negotiations, the BPG Entities closed on the SBA Loan, in the amount of approximately $600,000.00, and that loan is current in its payments. (*Id.*). The negotiations for the SBA Loan were conducted by either phone or e-mail, and Mr. Sebbag always remained in California for purposes of those negotiations, and never traveled to New York for them. (*Id.*).

Approximately two months after closing on the SBA Loan, Mr. Sebbag began negotiations, as Manager of the BPG Entities, with Plaintiff for the second loan. (*Id.*, at ¶ 6). Plaintiff advised that the second loan would also be in the amount of $600,000.00, and made by way of an Accounts Receivable Agreement, in which all accounts receivable of the BPG Entities would be used as security for the loan (hereinafter, the "AR Loan"). (*Id.*). As with the SBA Loan, Mr. Sebbag

negotiated primarily with Mr. Gonzales, and all communications with Plaintiff on Mr. Sebbag's end were conducted in California, and he never traveled to New York for purposes of those negotiations.  (*Id.*).

In or about September 2019, after approximately three to four months of negotiating the AR Loan, Paul Borowski of Plaintiff demanded that Mr. Sebbag sign a personal guaranty in order to secure that loan, and pressured him into doing so.  (*Id.*, at ¶ 7).  Mr. Sebbag, who was not represented by an attorney at the time or given adequate time to consult with one, reluctantly entered into the personal guaranty, having little alternative after months of negotiations for the AR Loan.  (*Id.*).  Mr. Sebbag signed the personal guaranty in California, as he did all the other loan documents.  (*Id.*).

The Personal Guaranty includes a choice of law provision, mandating that the agreement "be governed by, construed under, and enforced in accordance with the internal laws of the State of New York").  (*See* McEvoy Declaration, Ex. 3, § 14).  At the time he entered into the Personal Guaranty, Mr. Sebbag was not aware of this clause.  (*See* Sebbag Declaration, at ¶ 7).

The Personal Guaranty also contains a jury waiver clause, which provides as follows:[2]

> 15. <u>WAIVER OF TRIAL BY JURY</u>:
> 15.1 IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERE TO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSAE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY

---

[2] Plaintiff did not attach a copy of the Personal Guaranty to the Complaint; an unsigned copy is attached to the Declaration of Thomas McEvoy, Esq. ("McEvoy Declaration") as Exhibit 3.

> TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH
> PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH
> CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE
> DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY
> PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A
> COPY OF THIS SECTION WITH ANY COURT AS WRITTEN
> EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE
> WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

(*See* McEvoy Declaration, Ex. 3, § 15).  Similarly, at the top of the Personal Guaranty, just below the heading "Personal Guaranty", is the following: "This Document Contains a Wavier of Trial by Jury."  (*See id.*, at Ex. 3, p. 1).  At the time he entered into the Personal Guaranty, Mr. Sebbag was not aware that he was waiving his right to a jury trial for any claims arising out of the Personal Guaranty.  (*See* Sebbag Declaration, at ¶ 7).

Immediately following Section 15.1 of the Personal Guaranty is a forum selection and choice-of-law clause, which provides as follows:

> 16. <u>VENUE; JURISDICTION:</u>
> 16.1 Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Newtek so elects, be instituted in any court sitting in the State of New York, in the city in which Newtek's chief executive office is located, or if none, any court sitting in the State of New York (the "Acceptable Forums").  Guarantor agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.  Should such proceeding be initiated in any other forum, Guarantor waives any right to oppose any motion or application made by Newtek to transfer such proceeding to an Acceptable Forum.

(*See* McEvoy Declaration, at Ex. 3, § 16).  At the time he entered into the Personal Guaranty, Mr. Sebbag was not aware of this provision.  (*See* Sebbag Declaration, at ¶ 7).

Further, all notices under the Personal Guaranty were to be sent to Mr. Sebbag at 128 S. Laurel Avenue, Los Angeles, California, and to Plaintiff at 1981 Marcus Avenue, Suite 130, Lake Success, New York.  (*See* McEvoy Declaration, at Ex. 3, § 8.3).

Through approximately May 2020, the BPG Entities made payments on the AR Loan, and as Manager of the BPG Entities, Mr. Sebbag cut the checks to Plaintiff from the operating accounts of the BPG Entities from California, and sent them to Plaintiff from California.   (Sebbag Declaration, at ¶ 8).   Mr. Sebbag never traveled to New York for purposes of making loan payments to Plaintiff.   (*Id.*).

According to the Complaint,[3] on July 7, 2020, it sent a notice of default to the BPG Entities, advising that events of default had occurred under the Accounts Receivable Loan.   (Complaint, at ¶ 21).   Plaintiff avers that the BPG Entities breached the Accounts Receivable Agreement by failing to pay the outstanding amounts due to Plaintiff under the agreement.   (*Id.*, at 22).   According to the Complaint, at this point, Mr. Sebbag became liable under the Personal Guaranty for all amounts due to Plaintiff under the Accounts Receivable Agreement, which the Complaint alleges is $418,959.10 plus interest, late charges and other charges and fees.   (*Id.*, at ¶¶ 23, 33).   Plaintiff further alleges that on January 19, 2021, Plaintiff sent a demand for immediate payment of all amounts due under the Accounts Receivable Agreement to the BPG Entities and Mr. Sebbag, but that Mr. Sebbag has not paid the outstanding amounts due to Plaintiff, thereby breaching the Personal Guaranty.   (*Id.*, at ¶¶ 24-25, 31).

Mr. Sebbag was not personally served with the Complaint in New York; his ex-wife forwarded him the Complaint that she received, and then Mr. Sebbag's California attorney, Mark Goodfriend, Esq., accepted them on my behalf.   (Sebbag Declaration, at ¶ 10).

---

[3] On a motion to dismiss for lack of personal jurisdiction, "the Court accepts as true all well-pleaded factual allegations in the Complaint…."  *Mohamad v. Rajoub*, No. 17-cv-2385 (LAP), 2018 WL 1737219, at *3 (S.D.N.Y. Mar. 12, 2018).

## STANDARD OF REVIEW

"In a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Cleft of the Rock Foundation v. Wilson*, 992 F. Supp. 574, 580-81 (E.D.N.Y. 1998). "Before discovery, a plaintiff must plead in good faith legally sufficient allegations of jurisdiction in order to defeat a defendant's motion to dismiss for lack of personal jurisdiction…. These allegations, however, must constitute more than mere legal conclusions restated as statement of fact." *Guo Jin v. EBI, Inc.*, No. 05-cv-4201 (NGG) (SMG), 2008 WL 896192, at \*2 (E.D.N.Y. Mar. 31, 2008).

"To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 81 (2d Cir. 2018). "If, but only if, jurisdiction is proper under state law must the court address whether exercise of jurisdiction comports with constitutional standards of due process under the Fourteenth Amendment." *Stephan v. Babysport, LLC*, 499 F. Supp.2d 279, 285 (E.D.N.Y. 2007).

## ARGUMENT

### POINT I

### PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THAT DEFENDANT TRANSACTED ANY BUSINESS WITHIN NEW YORK

Plaintiff bears the burden of establishing jurisdiction over Mr. Sebbag. *See Mirman v. Feiner*, 900 F. Supp.2d 305, 308-09 (E.D.N.Y. 2012). "In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Leon*

*v. Shumkler*, 992 F. Supp.2d 179, 191-92 (E.D.N.Y. 2014). "New York's long-arm statute, allows for specific jurisdiction over non-domiciliaries and provides that a court may exercise personal jurisdiction over any non-domiciliary… who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." *Millennium Products Group, LLC v. World Class Freight, Inc.*, No. 2:17-cv-169 (DRH) (AYS), 2018 WL 1247384, at *2 (E.D.N.Y. Mar. 9, 2018). "Courts have found that this subsection of New York's long-arm statute effectively has two prongs: (1) [t]he defendant must have transacted business within the state, either itself or through an agent, and (2) the claim asserted must arise from that business activity." *Id.* "The statute allows jurisdiction only over a defendant who has purposefully availed himself of the privilege of conducting activities within New York and thereby invoke[d] the benefits and protections of its laws." *Leon*, 992 F. Supp.2d at 192.

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id.*

"New York may not extend long-arm jurisdiction over a non-domiciliary who was never physically present in New York, and who never agreed to provide any goods or services here, other than a promise to a New York corporation that he would make good if a corporation of another state defaulted on its debt …." *First Nat'l. Bank & Trust Co. v. Wilson*, 171 A.D.2d 616, 619, 567

N.Y.S.2d 468 (N.Y. App. Div. 1st Dep't. 1991).  In *Waldorf Assoc. v. Neville*, 141 Misc.2d 150, 154, 533 N.Y.S.2d 182 (N.Y. Sup. N.Y. Cty. Jul. 29, 1988), *aff'd.*, 155 A.D.2d 283, 547 N.Y.S.2d 556 (N.Y. App. Div. 1st Dep't. 1989), the Court dismissed the Complaint for want of personal jurisdiction, holding that a defendant-guarantor, who was a California resident and not physically present in New York, and never agreed to provide any goods or services in New York, other than a promise to a New York corporation that he would make good if an out-of-state entity defaulted on its debt, was insufficient to establish jurisdiction over the defendant-guarantor.

Here, Plaintiff has failed to proffer sufficient facts in support of personal jurisdiction over Mr. Sebbag.  To be clear, there are no ongoing business transactions between Plaintiff and the BPG Entities at issue; the sole event that triggered the Complaint was the alleged default of Mr. Sebbag under the Personal Guaranty.  (*See* McEvoy Declaration, Ex. 1, ¶ 5).  As such, any business relationships between Plaintiff and the BPG Entities (which are defunct anyway) is simply not relevant to the jurisdictional analysis.  Moreover, at all times, the BPG Entities were domiciled and had their principal place of business in California.  (Sebbag Declaration, at ¶ 3).

As for Mr. Sebbag, he did not transact any business within New York.  (*See* Sebbag Declaration, at ¶¶ 5-6).  At all times, he conducted the negotiations for the both the SBA Loan and the AR Loan from California, and never traveled to New York for purposes of those negotiations or the Personal Guaranty.  (*Id.*).  Further, notices under the Personal Guaranty were to be sent to Mr. Sebbag at his residence in Los Angeles, California.  (*See also* McEvoy Declaration, Ex. 3, § 8.3).  Mr. Sebbag made payments for the AR Loan, on behalf of the BPG Entities, from California, and never traveled to New York for purposes of making any loan payments.  (Sebbag Declaration, at ¶ 8).  Accordingly, Plaintiff has failed to proffer facts suggesting that Mr. Sebbag transacted business within New York, and the Court should dismiss the Complaint for want of jurisdiction.

*See Kowalski-Schmidt v. CLS Mortgage, Inc.*, 981 F. Supp. 105, 110 (E.D.N.Y. 1997) ("[I]n cases where there has been no showing that the critical events took place in New York, New York case law compels a dismissal of the action.")[4]

## POINT II

### THE FORUM-SELECTION CLAUSE IN THE
### PERSONAL GUARANTY IS UNCONSTITUTIONAL AND UNENFORCEABLE

The Personal Guaranty contains both Choice of Law and Forum Selection Clauses, which mandate that New York law govern the Personal Guaranty and any disputes or actions arising thereunder be venued in the State of New York.  (*See* McEvoy Declaration, Ex. 3, §§ 14, 16).  As a matter of law, the Forum Selection Clause is unenforceable as against Mr. Sebbag.  *See Handoush v. Lease Finance Group LLC*, 41 Cal. App.5th 729, 254 Cal Rptr.3d 461 (Cal. App. 1st Dist. 2019).[5]

---

[4]      If a plaintiff has failed to establish personal jurisdiction under the long-arm statute, "the Court need not examine whether its exercise would comport with due process."  *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l., Inc.*, 368 F. Supp.3d 460, 483 (E.D.N.Y. 2019).  Notwithstanding, even if this Court deems jurisdiction is appropriate under New York's long-arm statute (which it is not), the Complaint still must be dismissed because the exercise of long-arm jurisdiction over Mr. Sebbag would violate due process.  *See Leon*, 992 F. Supp.2d at 192 ("If the exercise of jurisdiction is appropriate under [New York's long-arm statute], the Court then must decide whether such exercise comports with the requisites of due process.")  In doing so, courts look to "(1) whether a defendant has 'minimum contacts' with the forum state and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with traditional notions of fair play and substantial justice …."  *Novak v. Overture Services, Inc.*, 309 F. Supp.2d 446, 456 (E.D.N.Y. 2004).  "The goal is to protect[] a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction."  *Rainbow Apparel Distribution Center Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26 (E.D.N.Y. 2013).

         As demonstrated above, Mr. Sebbag has no contacts with New York.  He never traveled to New York for purposes of entering into the Personal Guaranty or negotiating the underlying Accounts Receivable Loan.  (Sebbag Declaration, at ¶__).  Further, for the reasons discussed in Point II, *infra*, Mr. Sebbag is constitutionally entitled, as a citizen of California, to a jury trial in all civil matters in which he is a named party.  Therefore, by being subject to the jurisdiction of this Court, which is applying New York law, Mr. Sebbag is deprived of his constitutional right.  Accordingly, notions of fair play and substantial justice require that the Court dismiss the Complaint.

[5] This Court may look to California law in determining the appropriateness of the forum selection clause at issue. Under New York choice-of-law principles, a choice of law provision set forth in a contract "is set aside when application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state…. [T]he issue [must be] of such overriding concern to the public policy of another jurisdiction as to override the intent of the parties and the interest of [New York] in enforcing its own policies." *Marsh USA Inc. v. Hamby*, 28 Misc.3d 1214(A), 958 N.Y.S.2d 61 (Table) (N.Y. Sup. Ct., N.Y. Cty. Jul. 22, 2010). Here, notwithstanding the choice of law provision in the Personal Guaranty which calls for New York law, California

### A. California Law Governs, Applying
### <u>New York Choice-of-Law Rules</u>

As an initial matter, under New York choice-of-law principles, this Court should apply California law to this action.  "In a diversity case, a court must apply the "choice-of-law rules of the state in which it sits."  *The Ayco Co., L.P. v. Frisch*, No. 1:11-cv-0580 (LEK) (TWD), 2013 WL 8291759, at *5 (E.D.N.Y. Jan. 17, 2013).  "Under New York law, the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved; if no conflict exists, then the inquiry ends."  *Eagle Access, LLC v. BHA, Inc.*, No. 05-cv-2837 (NRB), 2007 WL 193725, at *3 (S.D.N.Y. Jan. 25, 2007).

Here, there is no dispute that an actual conflict exists between New York law and California law.[6]  In New York, jury trial waivers are permissible – *i.e.*, parties are free to contract to waive their right to a jury trial.  *Wechsler v. Hunt Health Systems, Ltd.*, No. 94-cv-8294 (PKL), 2003 WL 21878815, at *2 (S.D.N.Y. Aug. 8, 2003).  "[P]arties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the [Seventh Amendment] right to a jury trial."  *Id.*  Conversely, in California, parties *cannot* enter into any contractual pre-dispute waiver of the right to a jury trial.  *Grafton Partners v. Superior Court*, 116 P.3d 479, 488, 36 Cal.4th 944, 961 (Cal. 2005); *see also In re County of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015) ("Under California

---

public policy has an overriding interest in enforcing its own laws so as to protect the unwaivable right of one of its citizens, Mr. Sebbag, to a jury trial, as the above discussion explains.

[6] Under New York conflict-of-laws rules, interpretation of jury trial waivers is a matter of substantive New York contract law.  *See Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*, 327 F. Supp.3d 673, 685 (S.D.N.Y. 2018) ("New York contract law applies to the interpretation of the scope of the jury waiver provisions based on the choice-of-law provisions in the relevant agreements."); *see also Trafalgar Power, Inc. v. Algonquin Power Corp., Inc.*, No. 5:99-cv-1238 (NPM) (DEP), 2001 WL 37120011, *4, n.6 (S.D.N.Y. May 2, 2001 (noting that the scope of the jury waiver provision is a matter of "substantive law").  Similarly, in California, the question of whether a party can enter into a pre-dispute jury trial waiver is also a matter of "substantive" law.  *In re County of Orange*, 784 F.3d 520, 530 (9th Cir. 2015).  "It is a state rule of contract interpretation that furthers the state constitutional policy favoring jury trials… and rules of contract interpretation and construction are plainly substantive under *Erie*…."  *Id.*

law, pre-dispute jury trial waivers are invalid unless expressly authorized by statute…. Applying California law, we hold that the parties' contractual jury trial waiver is unenforceable.")

In the matter at bar, the Personal Guaranty contains an explicit pre-dispute jury waiver, both on the front page of the document and in a separate clause.  (*See* McEvoy Declaration, at Ex. 3, p. 1 and § 15).  Accordingly, insofar as there is a conflict between the laws of New York and California at issue, this Court should undertake a choice-of-law analysis.

"[A]lthough contractual selection of governing law is generally determinative, courts will not adhere to such a selection where there is fraud, violation of public policy, or insufficient contacts between the State selected and the transaction…. Put another way, New York courts will not enforce a choice-of-law provision where (1) the chosen law bears no reasonable relationship to the parties or the transaction or (2) where the chosen law violates some fundamental policy of a state that has a materially greater interest than does the chosen state." *Medtronic, Inc. v. Walland*, No. 21-cv-2909 (ER), 2021 WL 4131657, at \*5 (S.D.N.Y. Sep. 10, 2021); *see Ayco Co.,* 2013 WL 8291759, at \*5 (*same*).

New York bears no reasonable relationship to the Parties or to the dispute.  First, as noted, Mr. Sebbag was neither a resident of New York now nor at the time he entered into the Personal Guaranty.  (Sebbag Declaration, at ¶¶ 2, 5-7).  Second, he never traveled to New York for purposes of negotiating the Accounts Receivable Agreement or entering into the Personal Guaranty.  (*Id.*, at ¶ 6-7).  Indeed, at all times relevant to the Complaint Mr. Sebbag was located in California.  (*See id.*, at ¶ 5-7).  Finally, the BPG Entities, which underlie the AR Loan at issue, had their principal place of business in California.  (*Id.*, at ¶ 3).  Accordingly, there is no basis to apply New York law to this action.

More fundamentally, application of New York law to this matter would be in square violation of California law and public policy.  As noted, it is settled law in California that pre-dispute contractual waivers of jury trials are invalid.  *See Grafton Partners*, 116 P.3d at 488; *see also Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App.5th 1, 12, 213 Cal. Rptr.3d 410 (Cal. App. 1st Dist. 2017) (*citing Grafton*, holding that "because the waiver methods specified [by statute] are exclusive – and because all of them apply only after a lawsuit has been filed – a predispute agreement specifying that any lawsuit between the contracting parties will be adjudicated in a court trial, rather than a jury trial, is unenforceable.")  By contrast, New York allows for pre-dispute waivers of jury trials so long as they are entered into knowingly, voluntarily and intentionally.  *Hines v. 1025 Fifth Ave., Inc.*, No. 14-cv-3661 (SAS), 2015 WL 765943, at *3 (S.D.N.Y. Feb. 23, 2015).  As such, were this Court to apply New York law to this action, Mr. Sebbag's inviolate right to a jury trial would not be afforded the protection that it is merited under California law.

The Court's recent holding in *Medtronic* is persuasive.  The Court declined to enforce the Parties' contractual choice-of-law provision, which provided for New York law to govern their dispute.  *Medtronic, Inc.* 2021 WL 4131657, at *7.  The Court first determined that an actual conflict of laws existed between New York and California concerning restrictive covenants between employers and their employees.  *Id.*, at *6.  The Court then applied a choice-of-law analysis, first finding that California had a materially greater interest than New York in the dispute insofar as the defendant lived in California at the time he entered into the subject agreement, negotiated and executed the agreement there, and currently resided in California.  *Id.*  The Court concluded that applying New York law would violate a fundamental public policy of California, which codified proscriptions against contractual restraints on lawful professions, trades, or

businesses of any kind, and made certain contractual terms illegal, whereas New York tolerates non-compete covenants. *Id.* Accordingly, the Court held that "the law of California governs the instant suit, *contrary to the choice-of-law provision*" in the parties' contract. *Id.* (*emphasis added*); *see also TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp.3d 275, 283 (S.D.N.Y. 2016) (reaching same conclusion notwithstanding choice-of-law provision in parties' contract calling for New York law).

Similarly, in the matter at bar, California has a greater interest than New York in this dispute insofar as Mr. Sebbag, as a California resident, is plainly entitled to a jury trial, which New York does not protect. Thus, the consequences of applying New York law would mean that the jury trial waiver in the Personal Guaranty would be afforded deference, in contravention of California public policy, which holds that the right to a jury trial is "inviolate." *In Re County of Orange*, 784 F.3d at 530 ("California's rule on pre-dispute jury trial waivers embodies the state's substantive interest in preserving the right to a jury trial in the strongest possible terms… an interest the California Constitution zealously guards….")

Accordingly, "contrary to the choice-of-law provision" in the Personal Guaranty, California law governs. *See Medtronic, Inc.* 2021 WL 4131657, at *7.

**B.  The Forum Selection Clause Is Unenforceable As Against
    Mr. Sebbag, at all times a California Resident**

Not only should the Court disregard the choice-of-law provision in the Personal Guaranty, but it similarly should refuse to enforce the forum-selection clause in the Personal Guaranty. The enforceability of forum-selection clauses is governed by federal law. *Rudgayzer v. Google, Inc.*, 986 F. Supp.2d 151, 155 (E.D.N.Y. 2013). "The Second Circuit has developed a four-step framework to determine the validity of forum selection clauses in the context of a motion to dismiss… (1) the clause was reasonably communicated to the party challenging enforcement; (2)

the clause is mandatory rather than permissive in nature; and (3) the claims involved are subject to the clause." *5381 Partners LLC v. Sharesale.com, Inc.*, No. 12-cv-4263 (JFB) (AKT), 2013 WL 5328324, at *4 (E.D.N.Y. Sep. 23, 2013).  The burden shifts to the other side, who "must make a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.*

Enforcing the forum-selection clause in the Personal Guaranty would be unjust insofar as it would deprive Mr. Sebbag of his inviolate right to a jury trial in California.  As noted, California law applies to this dispute, *including to the question of whether to recognize Mr. Sebbag's underlying right, as a resident of California, to a jury trial. See In re County of Orange*, 784 F.3d at 530 (holding that California's rule on pre-dispute jury trial waivers is a matter of state substantive contract law that should be recognized by federal courts sitting in diversity); *Migliore v. Dental Fix Rx, LLC*, No. 15-cv-04257 (BRO (SSx), 2016 WL 7655768, at *4 (C.D. Cal. Jul. 22, 2016) (*citing In Re County of Orange*, holding that "Because the contract containing the jury trial waiver was governed by California law, and given that California holds, as a matter of public policy, that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial wavier clause, the district court should have applied California's rule on pre-dispute jury trial waivers").  Therefore, insofar as enforcing the forum-selection clause in the Personal Guaranty would result in Mr. Sebbag being deprived of his constitutional right to a jury trial in California, this Court should disregard that provision.

The California Supreme Court's decision in *Handoush* is instructive.  In *Handoush*, the plaintiff alleged breach of a lease agreement for credit card processing equipment. *Id.*, at 732.  The action was brought in California, and the defendant moved to dismiss on the ground that the lease agreement contained a forum selection clause calling for mandatory jurisdiction (as in the matter

at bar) in New York.  *Id.*  The plaintiff opposed the motion, arguing that enforcement of the forum selection clause would deprive it of its constitutionally-protected right to a jury trial.  *Id.*, at 732-33.  In denying the motion and rejecting the forum selection clause, the Court held that despite the fact that California favors contractual forum selection clauses, it will refrain from doing so if it "would substantially diminish the rights of California residents in a way that violates our state's public policy."  *Id.*, at 734.  The Court found that because the forum selection clause contained a predispute waiver of the right to a jury trial, enforcement of the clause "would be contrary to California's fundamental public policy protecting the jury trial right and prohibiting the courts from enforcing predispute jury trial waivers."  *Id.*, 734-35.

The Court further noted that "[w]hile California law holds predispute jury trial waivers are unenforceable, it is undisputed that under New York law there is no similar prohibition."  *Id.*, at 737.  Thus, the Court reasoned that "enforcement of the forum selection clause here has the potential to contravene a fundamental California policy of zealously guarding the inviolate right to a jury trial, which is unwaivable by predispute agreements."  *Id.*, at 739.  The Court concluded: "Because New York permits predispute jury trial waivers, and California law does not, enforcing the forum selection clause has the potential to operate as a waiver of a right the Legislature and our high court have declared unwaivable."  *Id.*

Similarly, here, recognition of the forum-selection clause against a California resident such as Mr. Sebbag would deprive him of his inviolate right to a jury trial and, in effect, work as an end-run around California's prohibition against pre-dispute jury trial waivers.  Thus, parties could evade California's public policy prohibiting pre-dispute jury trial waivers against its own citizens simply by including jury trial waivers and forum-selection clauses in contracts with California

residents.  Surely, the Court should not condone such a result, which runs counter to California law and well established public policy.

Finally, the interests of justice favor rejecting the Forum Selection Clause.  Mr. Sebbag was not represented by counsel at the time the Personal Guaranty was presented to him, he was not aware of the Forum-Selection Clause (or jury trial waiver) when he entered into it, and he was pressured into signing the Personal Guaranty by Plaintiff after three to four months of negotiating the AR Loan, at the final hour.  (Sebbag Declaration, at ¶ 7).

Accordingly, the Court should not enforce the Forum Selection Clause and, instead, should dismiss the Complaint for lack of personal jurisdiction.

**POINT III**

**THE COURT SHOULD DISMISS THE COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER THE VENUE TO THE <ins>CENTRAL DISTRICT OF CALIFORNIA</ins>**

The Court should dismiss the Complaint not only for lack of personal jurisdiction over Mr. Sebbag, but also because Plaintiff's chosen venue is improper.[7]

**A.  <ins>Dismissal Is Warranted Due to Improper Venue</ins>**

"Under 28 U.S.C. § 1406(a), a district court shall dismiss (or, in some circumstances, transfer) a case laying venue in the wrong division or district. Fed. R. Civ. P. 12(b)(3) provides the mechanism by which a party can ask a court to do so."  *Geffner v. Quanta Services, Inc.*, No. 18-cv-3761 (JPO), 2018 WL 6807388, at *2 (S.D.N.Y. Dec. 27, 2018); *see Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55, 134 S. Ct. 568, 187 L.Ed.2d 487 (2013) (noting that the Court can dismiss an action when venue is "improper" or

---

[7] While Mr. Sebbag is cognizant of the Forum Selection Clause, for the same reasons noted in Point II, *supra*, the Court should disregard it as void and against California law and public policy.

- 17 -

"wrong" pursuant to Rule 12(b)(3) or 28 U.S.C. § 1406(a); *see also Cosa Xentaur Corp. v. Bow*, No. 13-cv-2912 (JS) (ARL), 2014 WL 1331030, at *5 (E.D.N.Y. Mar. 31, 2014) (*same*). "If the defendant prevails on its Rule 12(b)(3) motion, the court has the power to dismiss or transfer the case to any district in which it could have been brought." *Dolson v. New York State Thruway Authority*, No. 00-cv-6439 (RLC), 2001 WL 363032, at *1 (S.D.N.Y. Apr. 11, 2001). "On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Geffner*, 2018 WL 6807388, at *2.

Venue is governed by 28 U.S.C. § 1391(b), which provides as follows:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

According to the Complaint, Plaintiff bases venue on subsections (2) and (3) of Section 1391. (*See* McEvoy Declaration, Ex. 1, at ¶ 4). Plaintiff has failed to meet its burden of establishing that venue is proper under these provisions. Initially, as Plaintiff concedes, Mr. Sebbag was not a resident of New York. (*See id.*). Further, for the reasons noted in Point I, *supra*, most of the events giving rise to this action occurred in California. (*See* Sebbag Declaration, at ¶¶ 4-8). Indeed, Mr. Sebbag never traveled to New York for purposes of the Accounts Receivable Agreement or the Personal Guaranty, and signed those agreements in California. (*Id.*, at ¶ 5=7). Additionally, the BPG Entities, which are the subject of the Accounts Receivable Agreement, were domiciled in California. (*Id.*, at ¶ 3). As such, Plaintiff has failed to allege sufficient facts establishing why New York is the proper venue for this action. *See Gilbert v. Gottlieb*, No. 95-

- 18 -

cv-3038, 1995 WL 761835, at *1 (E.D.N.Y. Dec. 15, 1995) ("It is clear from the complaint that

defendant… does not reside in New York and that the events giving rise to this claim occurred in

New Jersey.  Thus, laying venue in this district is impermissible under § 1391(a).")

Accordingly, the Court should dismiss the Complaint for improper venue pursuant to 28

U.S.C. § 1406(a) and Rule 12(b)(3).

### B.  In the Alternative, The Court Should Transfer the Venue to the Central District of California

To the extent that the Court declines to dismiss the Complaint for lack of personal

jurisdiction or improper venue, it should transfer the venue of this matter to the Central District of

California pursuant to 28 U.S.C. § 1404(a).  The Court articulated the rule for transfers of venue

as follows:

> Generally, to grant a transfer pursuant to 28 U.S.C. § 1404(a), the Court engages in a two –pronged inquiry…. First, the court asks whether the action sought to be transferred is one that might have been brought in the district court in which the movant seeks to have the case litigated…. If the proposed venue is proper, the court then considers whether the transfer will serve the convenience of witnesses and parties and is in the interests of justice….. When analyzing the second prong, the court looks to several factors, including the (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.

*Blechman v. Ideal Health, Inc.*, 668 F. Supp.2d 399, 403 (E.D.N.Y. 2009).

First, this action could have been brought in the Central District of California pursuant to

28 U.S.C. § 1391(b)(1), since Mr. Sebbag has resided in that State since 2002.  (*See* Sebbag

Declaration, at ¶ 2).  Accordingly, that is a proper venue to which the Court should transfer this

matter.

Second, having this matter transferred to the Central District of California is convenient for most witnesses and parties, and serves the interests of justice. Mr. Sebbag has no connections with New York, does not reside in New York, and never traveled to New York for purposes of the underlying Accounts Receivable Agreement or Personal Guaranty. (*Id.*, at ¶ 5-7). Requiring Mr. Sebbag to travel to New York from California, with a three-hour time difference, is uniquely inconvenient. And while Newtek allegedly has its principal place of business in New York; (*see* McEvoy Declaration, Ex. 1, at ¶ 1); it is more equipped with the means and resources to travel to California than Mr. Sebbag is to travel to New York for purposes of this action, which would be extremely costs and burdensome to him. (*See* Sebbag Declaration, at ¶ 11). To be sure, Newtek, or its affiliate, appears to be a publicly traded company, trading under the NASDAQ exchange under the ticker symbol "Newt" at approximately $29.97 per share at the close of the market on December 2, 2021, and with a market capitalization of approximately $714,690,000 as of same date. (*See* McEvoy Declaration, Ex. 4).[8] As such, Newtek is in a much better position than Mr. Sebbag to bear any associated costs of traveling from New York to California for purposes of this litigation. Further, California has more connections to this matter than New York, since the BPG Entities, at issue in the underlying Accounts Receivable Agreement, were California residents, and neither those companies nor Mr. Sebbag ever traveled to New York for purposes of that Agreement or the Personal Guaranty. (*See* Sebbag Declaration, at ¶¶ 3, 5-7).

Finally, as discussed in Point II, *supra*, California has a much greater interest in resolving this dispute than New York. First, for the reasons stated in Point II(A.), the Court should apply California law to this dispute and, as such, a court sitting in California would be better equipped

---

[8] The Court "may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000).

at litigating this matter than this Court, as surely such a court would have more familiarity with California law than this Court.  *See Bank of America, N.A. v. Hensley Properties, LP*, 495 F. Supp.2d 435, 440 (S.D.N.Y. 2007) (holding that "totality of the circumstances… weigh compellingly in favor of conducting this litigation in the Eastern District of California," in part because defendant's counterclaims "would be governed by California law").  Second, as further discussed in Point II, *supra*, Mr. Sebbag is plainly entitled to a jury trial as a California resident. As such, a California court is best suited to litigating this action than New York, and there is no reason to burden this Court with a jury trial given that New York recognizes and enforces pre-dispute jury trial waivers whereas California does not and holds the right to a jury trial for its citizens to be "inviolate."  *Compare Wechsler* 2003 WL 21878815, at *2 ("[P]arties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the [Seventh Amendment] right to a jury trial.") *with Grafton Partners* 116 P.3d  at 486 (California's "Constitution identifies the right to jury trial as 'inviolate'").

Accordingly, based on the totality of the circumstances, should this Court decline to dismiss the Complaint outright for lack of personal jurisdiction or improper venue, it should transfer the venue to the Central District of California.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Sebbag's motion in its entirety, and dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or, in the alternative, transfer the venue of this action to the Central District of California pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

Dated: New York, New York
December 3, 2021

Respectfully submitted,

SICHENZIA ROSS FERENCE LLP


By: ____*/s/ Thomas McEvoy*_____
                Thomas McEvoy, Esq. (TM-1984)
        1185 Avenue of the Americas, 31st Floor
        New York, New York 10036
        (212) 930-9700

        *Attorneys for Defendant*
        *Stephan Joseph Sebbag*