UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

CDS BUSINESS SERVICES INC., doing
business as Newtek Business Credit,

                     Plaintiff,          **REPORT AND RECOMMENDATION**

   v.                                        21-CV-1992 (JS) (ST)

STEPHAN JOSEPH SEBBAG

                     Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Before this Court is a motion for summary judgment by CDS Business Services, Inc., (the "Plaintiff") a Delaware corporation doing business as Newtek Business Credit, for a claim of breach of guarantee brought against Stephan Joseph Sebbag (the "Defendant"). For the reasons discussed herein, this Court respectfully recommends that the motion for summary judgment be GRANTED.

## BACKGROUND

The Court presumes familiarity with the comprehensive factual and procedural history as detailed in this Court's previous Report and Recommendation and so briefly summarizes the necessary history here. *See* R & R dated Dec. 16, 2022, ECF No. 51 (Report and Recommendation adopted in full on Feb. 16, 2023).

Plaintiff is a Delaware corporation offering small business loans through the Small Business Administration. *Id* at 2. Defendant is the manager of two non-party entities, Big Picture Group LLC and BPG Interactive, LLC (collectively, the "BPG Entities"). *Id*. In order to provide financing for cash flow and new sales hires, the BPG Entities began negotiations with Plaintiff to provide loans to cover those needs. *Id.*

1

As a condition to providing this financing, Plaintiff required Defendant to execute a personal guarantee rendering him unconditionally and irrevocably liable for the obligations of the BPG Entities. *Id* at 3. At the time of Defendant's previous motion to dismiss, Defendant admitted to having signed the guarantee in a sworn declaration. Sebbag Decl. ¶ 7, ECF No. 28-2. Defendant now claims he has no recollection of signing a personal guarantee. Def. Opp. Br. at 7, ECF No. 47.

Plaintiff provided financing to the BPG Entities, which subsequently made payments on the outstanding loan balance. R & R dated Dec. 16, 2022 at 3, ECF No. 51. However, the BPG Entities ceased operations sometime in 2020 and no payments have been made on the BPG Entities' obligations since August 2020. *Id*; Triant Decl. at ¶¶ 52, ECF No. 44-17.

Plaintiff moved for summary judgment on its sole claim for breach of personal guarantee on October 7, 2022. The motion was then referred to me for a Report and Recommendation by the Honorable Joanna Seybert.

## LEGAL STANDARD

**I.     56(a) Motion for Summary Judgment Standard.**

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Marks v. Nat'l Communications*

2

*Ass'n, Inc.*, 72 F. Supp.2d 322, 329 (S.D.N.Y. 1999) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Mere speculation or conjecture will not suffice, . . . nor will reliance on unsupported assertions." *Id* (internal quotations and citations omitted). "Rather, the nonmoving party must provide 'concrete evidence from which a reasonable juror could return a verdict in [her] favor.'" *Id* (quoting *Anderson*, 477 U.S. at 256).

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## DISCUSSION

Defendant contests Plaintiff's motion for summary judgment on two grounds; first, that the motion for summary judgment is premature because Defendant denies that this Court has personal jurisdiction over him and second, issues of material fact exist precluding summary judgment. Neither argument is persuasive.

I.    **The Motion for Summary Judgment is Not Premature.**

Defendant claims that this motion for summary judgment is premature because, at the time this motion was briefed by the parties, Defendant's motion to dismiss for lack of personal

3

jurisdiction was still pending before this Court. *See* Def. Opp. Br. at 14, ECF No. 47. However, while this motion for summary judgment has been pending, this Court issued its Report and Recommendation on Defendant's motion to dismiss recommending the motion be denied. *See* R & R dated Dec. 16, 2022, ECF No. 51. That Report and Recommendation was subsequently adopted by District Judge Joanna Seybert on February 16, 2023. *See* Min. Order dated Feb. 16, 2023. As it is the law of this case that this Court has personal jurisdiction over Defendant pursuant to his execution of a Personal Guaranty containing a valid New York forum selection clause, this motion for summary judgment is not premature and this Court shall continue to examine the motion on its merits.

    **II.**    **Plaintiff's Motion for Summary Judgment Should Be Granted.**

        a.  *Liability for Breach of Guarantee*

Plaintiff's sole claim is one of breach of guarantee for a personal guaranty allegedly signed by Defendant. "Under New York law, the elements of a claim for breach of guarantee are: '(1) an absolute and unconditional guaranty, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt.'" *PNC Equipment Finance, LLC v. Montauk Transport Service Inc.*, No. 18-cv-5883 (RMM) (ARL), 2019 WL 8685091, at *3 (E.D.N.Y. Dec. 16, 2019) (quoting *Merck Cash & Capital, LLC v. Haute Soc'y. Fashion, Inc.*, 16-CV-2696 (ILG), 2017 U.S. Dist. LEXIS 104821, 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017)). The parties agree that the sole element at issue is the first, "whether there is an absolute and unconditional guaranty." *See* Def. Opp. Br. at 6, ECF No. 47.

The crux of the issue is a missing signature page. As part of the parties' agreement to secure a loan to cover the account receivables of the BPG Entities, Plaintiff requested that Defendant sign a personal guaranty for the debt. Pl. Br. at 1, 3, ECF No. 44-23. However, neither

4

party possesses a signed version of the guaranty. *Id* at 3. Plaintiff argues it has presented sufficient evidence demonstrating that Defendant did in fact sign the guaranty while Defendant maintains he cannot recall ever signing the guaranty, therefore precluding summary judgment. *Id* at 13-16; Def. Opp. Br. at 7, ECF No. 47. For two reasons, Plaintiff is correct and should be entitled to summary judgment.

> i. <u>Defendant has Previously Admitted Under Oath to Signing the Personal Guaranty.</u>

First, Defendant has previously admitted in sworn statements to this Court that he signed the personal guaranty but now seeks to recant his previous testimony. Defendant previously moved to dismiss Plaintiff's claim for lack of personal jurisdiction. *See generally*, Def. Mot. to Dismiss, ECF No. 28. In conjunction with this motion, Defendant submitted a sworn affidavit in which he states:

> Mr. Borowski demanded that I sign a personal guaranty to secure the second loan, and pressured me into doing so. I was not represented by an attorney when presented with the personal guaranty or given adequate time to retain and consult with an attorney. Faced with little choice after months of negotiations and at the final stages of negotiating that loan, I reluctantly signed the guaranty. Sebbag Decl. ¶ 7, ECF No. 28-2.

Defendant then went on to confirm this in his subsequent deposition:
> Q.    Had you personally signed a guarantee of the obligations of Big Pictures and BPG interactive under the accounts receivable administration agreement?
> A.    I didn't want to and I was put in a position where I had to, but I did, yes. Sebbag Dep. at 59:13-19, ECF No. 44-15.

Defendant subsequently changed his testimony stating later in his deposition:
> Q.    Do you remember signing a personal guarantee?
> A.    I don't recall.
> Q.    Do you recall not signing a personal guarantee?
> A.    I don't recall. At this point, I do not recall. It's possible. *Id* at 69:22-71:7.

"It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987); *see also Trans-Orient Marine Corp. v. Star Trading &*

5

*Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991). The instant case presents an analogous though admittedly somewhat different scenario. Defendant has previously sworn that he did in fact sign a personal guarantee in a declaration submitted to this Court. He further admitted to signing the guarantee during his sworn deposition testimony, albeit he claims it was signed under duress. However, in the midst of his deposition, Defendant's testimony changed and he suddenly could not recall whether or not he signed the guaranty. Regardless of the exact timing of the shift, the rationale for this rule holds true. A party should not be allowed to "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact" by changing his already presented sworn testimony. *See Mack,* 814 F.2d at 124-25.

To explain the change, Defendant argues that in his declaration, Defendant meant that he had signed the Approval Letter for the loan, which Defendant believed amounted to nothing more than a term sheet which stated he would eventually be required to sign a personal guaranty. *See* Def. Opp. Br. at 11-12, ECF No. 47. In further support, Defendant submits a subsequent declaration stating the same. Sebbag 2d Decl. ¶ 7-14, ECF No. 46.  However, Defendant's original declaration cannot reasonably be read in the manner asserted. Defendant unambiguously states "Mr. Borowski demanded that I sign a personal guaranty to secure the second loan . . . I reluctantly signed the guaranty." Sebbag Decl. ¶ 7, ECF No. 28-2. Defendant is unequivocal that what was signed was a personal guaranty, not the Approval Letter.  Moreover, when initially questioned about the guarantee during his deposition, Defendant admitted that, although he did not want to, he was put into a position where he felt he had to sign the personal guarantee and did in fact do so. Sebbag Dep. at 59:13-19, ECF No. 44-15.  This testimony casts considerable doubt on Defendant's subsequent reinterpretation of his sworn declaration.

6

Also unpersuasive is Defendant's assertion that resolving the discrepancies in Defendant's testimony would amount to an impermissible credibility determination. *See* Def. Opp. Br. at 11, ECF No. 47. The cases Defendant relies on all involve disputes requiring a court to resolve conflicting testimony between two witnesses or otherwise weigh countervailing factual evidence. *See, e.g., Marks v. Nat'l Communications Ass'n, Inc.*, 72 F. Supp.2d 322, 333 (S.D.N.Y. 1999) (weighing credibility of Plaintiff's testimony over non-party declaration); *Vital v. Interfaith Medical Center*, 168 F.3d 615, 621 (2d Cir. 1999) (finding reversible error where magistrate judge resolved an issue of fact in oral hearing rather than determining whether an issue of fact existed). In such instances, weighing of evidence of determining witness credibility is improper as "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Vital*, 168 F.3d at 621. However, where the sole issue is one where a witness seeks to change previously sworn testimony, the rule in this circuit is clear. Defendant may not now revise his testimony to create an issue of fact where none would otherwise exist.

                ii. <u>Even Crediting Defendant's Subsequent Testimony, Defendant is Unable to Show the Existence of an Issue of Material Fact.</u>

Furthermore, even if this Court were to credit Defendant's subsequent testimony that he does not recall whether or not he signed a personal guaranty, such testimony is insufficient to create a material issue of fact. In support of its motion, Plaintiff relies on the following:

1. Defendant's prior sworn declaration asserting he signed the personal guaranty;
2. Defendant's deposition testimony asserting he signed the personal guaranty;
3. Deposition testimony from the Notary attesting that he notarized a signature on a personal guaranty signed by Defendant;
4. The Notary's testimony that Defendant also signed the Notary's notary journal acknowledging that he had notarized Defendant's signature on a personal guaranty; and
5. Copies of said notary journal containing what is asserted to be Defendant's signature. *See* Def. Br. at 13-16, ECF No. 44-23.

7

In response, Defendant points to his deposition testimony and second declaration in which he states he cannot recall signing the personal guaranty as well the Notary's testimony that it was possible that the guaranty presented to him at his deposition was different from the guaranty notarized by him because the Notary did not keep copies of the actual documents notarized. Def. Opp. Br. at 6-9, ECF No. 47. Notably, in all of Defendant's briefing Defendant does not deny signing the guaranty, only that he does not recall. A "nonmovant cannot survive summary judgment simply by asserting that a potential witness's credibility is at issue. Rather, to put credibility in issue so as to preclude summary judgment, the nonmovant must produce specific facts that demonstrate an actual inconsistency." *Marks*, 72 F. Supp.2d at 333 (internal citations and quotations omitted). As this Circuit has previously held however, testimony that a nonmovant "does not recall" or that the existence of some fact is "possible" is insufficient to create an issue of material fact where one would not otherwise exist. *See FDIC v. National Union Fire Ins. Co.*, 205 F.3d 66, 71 (2d Cir. 2000); *see also Negron v. Suffolk Cty Police Dep't*, No. 18-CV-5426 (JS) (ARL), 2020 WL 3506061 at *1 (E.D.N.Y June 29, 2020); *Creighton v. City of New York,* No. 12-CV-7454 (PGG), 2017 WL 636415 at *40 (S.D.N.Y. Feb. 14, 2017). Absent any other evidence to create a genuine issue of material fact on whether the Defendant signed the guaranty I respectfully recommend that this Court determine that no such genuine issue exists. As this is the sole element at issue in Plaintiff's breach of guarantee claim, I further recommend this court grant Plaintiff's motion for summary judgment.

    b. *Damages*

Having recommended this Court grant Plaintiff's motion for summary judgment, I proceed to consider Plaintiff's damages calculations. At the outset I note that Defendant has not contested the accuracy of Plaintiff's purported damages in their briefing of this motion. Rather,

8

Defendant argues in his Rule 56.1 Counterstatement of Facts that the exhibits on which Plaintiff relies in making its calculations are "unauthenticated, hearsay and otherwise inadmissible" and "were not produced during discovery." Def. L.R. 56.1 Counterstatement at ¶¶ 65-75, ECF No. 49. This Court will not consider arguments improperly raised solely in a Rule 56.1 Statement. *Negron v. Suffolk Cty Police Dep't*, No. 18-CV-5426 (JS) (ARL), 2020 WL 3506061 at *2 (E.D.N.Y June 29, 2020). Thus, I will treat Plaintiff's calculations as uncontested.

Plaintiff seeks a total amount of $737,610.40, plus additional interest, collateral monitoring fees, and legal expenses and fees. I will examine the accuracy of Plaintiff's calculations of each subset of that total amount in turn.

i.  Alleged Outstanding Principal Balance

Pursuant to the ARAA between Plaintiff and Big Picture Group, LLC and BPG Interactive LLC, Plaintiff agreed to purchase some of Big Picture Group, LLC and BPG Interactive LLC's accounts receivable in exchange for advanced payments to both BPG Entities for those accounts. *See* Triant Decl. at ¶¶ 12-15, ECF No. 44-17. Plaintiff did advance funds, and the BPG Entities did make periodic payments as detailed in Plaintiff's Loan History report.[1] Pl. Ex. 42, ECF No. 44-18 (Loan History Report). No payments have been made under the ARAA since August of 2020. Triant Decl. at ¶¶ 52, ECF No. 44-17. At the time the instant motion was filed, the Loan History submitted by Plaintiff reflected an outstanding principal amount of $376,581.36. *Id* at 54. The Court finds Plaintiff's submitted Loan History to be comprehensive

---

[1] The BPG Entities failed to make timely payments in June and July of 2020, leading the parties to enter into a Forbearance Agreement in which Plaintiff agreed to delay any remedial actions under the ARAA provided the BPG Entities continued to make payments. Triant Decl. at ¶¶ 38-40, ECF No. 44-17. While the BPG Entities briefly resumed payments at the end of July 2020 and in August 2020, no further payments were made. *See id* at ¶¶ 38-40, 52.

9

and accurate. With no objection from Defendant, the Court recommends that $376,581.36 is the accurate amount of principal owed under the ARAA.

Furthermore, as Plaintiff has presented sufficient evidence to show Defendant signed the Personal Guaranty on behalf of the BPG Entities, Defendant is personally liable for the outstanding principal amount. *See* Section II.a., *supra*; Triant Decl. at ¶¶ 28-30, ECF No. 44-17. Accordingly, this Court respectfully recommends that Defendant be held personally liable for the outstanding principal balance listed above.

ii.  Alleged Interest Balance as of October 2, 2022.

The terms of the ARAA allows for the accrual of interest on Obligations owed at a rate of 4.5% per annum over the Prime Rate.[2] Triant Decl. at ¶ 21, ECF No. 44-17. In the event of a default, interest accrues at a per annum rate of 9% over the Prime Rate. *Id* at ¶ 22. Plaintiff has been charging interest at default rate since October 2020, and the BPG Entities' last payment was made in August of the same year. *Id* at ¶¶ 50 n. 2, 52. The terms of the ARAA also allow for a Collateral Monitor's Fee in the amount of .40% of the average outstanding balance for the prior calendar month. *Id* at ¶ 19. Until February of 2022, the accrual of collateral monitoring fees was included in Plaintiff's interest calculations. *Id* at ¶ 48. After that date, it was calculated as a part

---

[2] The ARAA defines Obligations as:
> [A]ll Advances, extensions of credit, loans, debts, liabilities (including all interest and amounts charged to the Obligations pursuant to any agreement authorizing Newtek to charge the Obligations), obligations, lease payments, guaranties, covenants, and duties owing by Client to Newtek, its subsidiaries or affiliates, of any kind and description (whether pursuant to or evidenced by the Purchase Documents (as defined herein below) or by any other agreement between Newtek and Client, and irrespective of whether for the payment of money), whether made or incurred prior to, on, or after the Termination Date, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including any debt, liability or obligation owing from Client to others which Newtek may obtain by assignment or otherwise, and all interest thereon and all Newtek Expenses. Triant Declaration at ¶ 17, ECF No. 44-17.

of the fees category. *Id*. In total, Plaintiff's Loan History report reflects a total amount of interest owed as of October 2, 2022 of $136,942.54. The Court finds this figure to be accurate based on Plaintiff's comprehensive accounting of the loan history.

                    iii.      <u>Alleged Expenses and Fees Balance Excluding Attorney's Fees.</u>

The ARAA allows for recovery of all costs and expenses "incurred by Plaintiff in enforcing or defending the Agreement or otherwise exercising its rights and remedies. . . including, but not limited to, costs and expenses, incurred in connection with any proceeding, suit, enforcement of judgment or appeal and reasonable attorneys' fees and expenses incurred by Plaintiff in enforcing or defending the Agreement." *Id* at ¶ 18 (internal quotations omitted). The Loan History records reflect fees of: (1) $52,110.57 in collateral monitoring fees, (2) a $1,000 appraisal fee, (3) $81.43 in shipping, and (4) $300 in miscellaneous expenses. *Id* at 55. The Court finds these amounts to be reasonable and adequately supported by the record.

                    iv.      <u>Alleged Attorneys' Fees and Expenses.</u>

Under the "American Rule" attorneys' fees are recoverable when allowed by statute or an enforceable contract providing for such fees. *Summit Valley Indus., Inc. v. United Brotherhood of Carpenters & Joiners*, 456 U.S. 717, 721 (1982); *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d. Cir 2004).

However, even when a plaintiff may recover attorneys' fees under the terms of a valid contract, plaintiff retains the burden of demonstrating the reasonability of such fees. *Eastern Savings Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. Reasonable fees are "the product of a reasonable hourly rate and the reasonable number of hours required by the case. *Millea v. Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned*

11

*Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). Plaintiff submits copies of invoices with its submission totaling $170,665.50.[3] Examining both the reasonableness of the hours worked and the hourly rate, I find the Plaintiff is entitled to a reduced sum of attorneys' fees based on the prevailing hourly rate in this district.

"An application for attorney's fees must be supported by accurate, detailed, and contemporaneous time records." *Robinson,* No. 13-CV-7308, 2016 WL 3365091, at *9 (quoting *La Barbera v. ASTC Labs, Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010)) (internal quotations omitted). Even when supported by such documentation "hours that were excessive, redundant, or otherwise unnecessary to the litigation" are note recoverable. Id at *10 (quoting *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 237 (2d Cir. 1987)) (internal quotations omitted).

Plaintiff submits detailed records of invoices for work performed listing the task performed, the hours needed, and the hourly rate. *See* Pl. Ex. 43, ECF No. 44-19 (Counsel's collected invoices for services rendered), Zabarauskas Decl. at, ¶¶ 9-10, ECF No. 44-20. (Attorney declaration in support of attorney's fees). These records date from March 17, 2021, when Plaintiff's counsel began its representation to August 31, 2022. Zabarauskas Decl. at ¶ 10, ECF No. 44-20. During that time Plaintiff's counsel has prepared and participated in multiple appearances before this Court, conducted initial discovery, and successfully defended against a Motion to Dismiss for Lack of Personal Jurisdiction. *Id* at ¶ 11. In that span, Plaintiff's counsel billed a total of 325.9 hours. *Id* at ¶ 10. The Court finds this number of hours to be reasonable and not excessive, redundant, or otherwise unnecessary.

To determine whether an hourly rate is reasonable, "a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp.

---

[3] Plaintiff's counsel reduced its legal fees from $171,328.00 as listed in the invoices due to two erroneously billed entries totaling $662.50. Zabarauskas Decl. at ¶ 8, ECF No. 44-20.

2d 131, 155 (E.D.N.Y. 2013). "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. A court may also consider the complexity of the matter at hand in determining the reasonability of proposed attorney's fees. *Sparkman v. Zwicker & Associates, P.C.*, No. 04-CV-1143 (NG) (KAM), 2006 WL 463939 at *2 (E.D.N.Y. Feb. 27, 2006).

Plaintiff's counsel charges an hourly rate for partners of $600, between $485-$625 for associates, and between $150-$370 for paralegal and other non-attorney work. Zabarauskas Decl. at ¶ 10, ECF No. 44-20. Each of these rates is well above what is typically awarded in the Eastern District. Furthermore, while counsel has spent substantial time preparing for this motion for summary judgment, this matter ultimately boils down to a single, easily dispensed with issue, which is whether Defendant signed a personal guarantee for the BPG Entities' loans. As such, the Court finds that Plaintiff counsels' proposed hourly rates are excessive. However, in light of the fact that Defendant has failed to contest Plaintiff's calculations, the Court recommends awarding the upper range of recognized rates in this District. Accordingly, the Court recommends awarding attorney's fees at hourly rates of $450 for partners, $300 for associates, and $100 for paralegals and other non-attorney work. *See Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. Modifying the total hourly rate and hours worked chart at Paragraph 9 of the Zabarauskas Declaration yields a modified total of $109,105.00,[4] Zabarauskas Decl. at ¶ 9, ECF No. 44-20, and I find that sum to be a reasonable amount for Plaintiff's attorney's fees.

Plaintiff has also submitted evidence of out-of-pocket expenses totaling $11,448.12 for this matter. *See id* at ¶ 13 (citing Pl. Ex. 43). The Court finds these expenses to be reasonable and

---

[4] The table at paragraph 9 has been corrected by Plaintiff to remove the two erroneous entries totaling $662.50. Zabarauskas Decl. at ¶ 9, ECF No. 44-20.

13

supported by the record. As such, I respectfully recommend the Court award the full amount requested. In total, Plaintiff should be awarded $120,553.12 for attorney's fees and expenses.

       v.   <u>Additional Pre-Judgment Interest and Collateral Monitoring Fees.</u>

Plaintiff has provided interest calculations up to October 2, 2022. Plaintiff is further entitled to pre-judgment interest from October 3, 2022 up to the date of judgment. Per the terms of the ARAA pre-judgment interest should be awarded at the Default Rate of 9% over the Prime Rate as published by the Wall Street Journal. Pl. Ex. 2 at 4, ECF No. 44-3 (ARAA); Triant Decl. at ¶ 22, ECF No. 44-17. The ARAA further allows for a collateral monitoring fee of .4% on the average outstanding balance for the prior calendar month, which annualizes to a rate of 4.8%. Triant Decl. at ¶ 19, ECF No. 44-17. I respectfully recommend that Plaintiff be awarded pre-judgment interest and collateral monitoring fees from October 3, 2022 to the date of entry of judgment against Defendant.

## CONCLUSION

For the reasons given, I recommend that the Court GRANT Plaintiff's motion for summary judgement and award damages totaling $687,569.02 plus prejudgment interest at an annual rate of 9% above the Prime Rate and a collateral monitoring fee of 4.8% from October 3, 2022, to the date of entry of judgment.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                 /s/ Steven Tiscione
                                               Steven L. Tiscione
                                               United States Magistrate Judge
                                               Eastern District of New York

Dated: Central Islip, New York
       August 16, 2023